Fawcett *v.* Rubber & Celluloid Harness Trimming Co.

*(Circuit Court, D. New Jersey.* April 1, 1889.)

PATENTS FOR INVENTIONS—NOVELTY—HARNESS-MOUNTINGS.

Claim 1 of letters patent No. 122,163, granted December 26, 1871, to William Fawcett, which is for "harness-mountings covered with leather or hard rubber upon the outer side, leaving the inside uncovered," is void for want of novelty.

In Equity. Hearing on bill and proofs.

Bill by William Fawcett against the Rubber & Celluloid Harness Trimming Company, for infringement of letters patent No. 122,163. This bill was filed in August, 1878, and the cause was at issue early in 1879. Some testimony had been taken, when, on October 8, 1879, it was stipulated that proceedings be suspended for three months from that date for the convenience of counsel. Nothing further was done until January, 1888, when complainant obtained an order appointing a special examiner to take depositions. At the hearing it was objected that this delay of nearly nine years was a bar in equity to the consideration of the case; but the point was not pressed, and, as neither party appears to have been eager to speed the cause, the court refused to sustain the objection.

*A. V. Briesen,* for complainant.

*J. C. Clayton* and *A. Z. Keasbey,* for defendant.

WALES, J. This is a suit in equity, brought to restrain the infringement by the defendant of letters patent No. 122,163, granted to William Fawcett, the complainant, December 26, 1871, for improvement in covering harness-mountings. The specification set forth that the—

"Invention has for its object to furnish an improvement in covering harness-mountings, simple in construction, convenient in application, inexpensive, and at the same time will give a neat and elegant appearance to the mountings; and it consists in the covering applied to the mountings, as hereinafter more fully described. A represents a terret, the inner surface of which is rounded off to receive the plating. The outer surface is also rounded off, and has a shoulder or recess formed in it near each edge, as shown in Figs. 2 and 3. B is the covering, which may be made of leather or hard rubber. The covering, B, is moulded or otherwise formed, so as to fit upon the outer side of the mountings; the shoulders or recesses preventing it from slipping off. The ends of the covering are secured to the shank or neck of the mounting. For additional security, and to add to the appearance of the mounting, wires, C, may be passed over the covering, B, along the shoulders or recesses of the mountings, as shown in Fig. 2, its ends being secured to the shank or neck of the mountings; or, if desired, the wires, C, may be covered with or embedded in the covering, B, as shown in Figs. 4 and 5, so as to secure the said covering in place, and at the same time be entirely out of sight. This construction enables the covering to be applied to the mountings only upon the outer side, leaving the inner side uncovered to receive the plating and the wear, thus avoiding facing the mountings with metal, and the attending trouble and expense."

Only the first claim of the patent is in controversy, and is in these words:

"(1) Harness-mountings, covered with leather or hard rubber upon the outer side, leaving the inner side uncovered, substantially as herein shown and described, and whether the wires, C, be used or not, as set forth."

It is not denied that the defendant has made and sold terrets which are clearly within the specifications and claim. The defense is anticipation and want of novelty. Both parties had been engaged in the business of manufacturing harness-mountings, and were familiar with its progress, with the various styles adopted, and with the different materials used in covering and ornamenting them. Rings and terrets had been entirely covered with leather or hard rubber long before the date of the plaintiff's patent, but it was found that the friction of the rein on the inner side of the terret would wear through the leather; and to remedy this defect the Tompkins patent, of 1862, for an improvement in hooks and terrets for harness saddles, provided for the ornamentation of the outside only of the hooks and terrets by means of a leather covering, but in a different way from that described in complainant's patent. The Dunham patent, of 1866, is for an invention which consists of a buckle or ring composed of a metal core, covered with or protected by India rubber. The Albright patent, of 1867, is for the application of a coating of vulcanized caoutchouc, or rubber, to metallic trimmings for carriages and harness, so as to protect from rust, and impart an ornamental appearance. The Weiner patent, of July, 1871, shows a terret with a ridge in the center and shoulders at each side. In this terret the leather envelops the ring, and is stitched on the inside with a metallic lining spun up on the inside of the terret. These several patents are among the record exhibits of the defendant, and are referred to for the purpose of showing lack of invention by complainant, as well as to indicate the progressive stages of improvement in ornamented harness-mountings. The cores of these mountings have, without any exception worth noting, always been made of metallic castings, which give them strength and durability; the leather or rubber coverings being used simply for beauty and finish. From the evidence and the exhibits produced at the hearing it appears that patents have been so liberally granted for improved harness-mountings that the boundary between invention and mechanical skill or contrivance has become, in many cases, almost, if not entirely, effaced. If credit is to be given to the defendant's witnesses, terrets covered on the outer surface only with japan or vulcanized rubber have been long known in the trade. Mr. Theberath, a retired manufacturer, testifies that he found japanned terrets when he first went into the harness business, and that the only difference between the Fawcett terret and the Weiner terret, leaving the wires and the lining out of the question, is that one has japan and the other has leather. Mr. Albright, the president of the defendant company, says that he has been engaged in the manufacture of rubber-coated harness trimmings since 1867, and identifies a number of carriage and harness mountings, including terrets, center rings, hub-bands, and neck-yoke tips, as being the same, or similar to articles of that description made by him in the years 1868, 1870, and 1871; all of which show a covering of hard rubber on the outer surface

only.   His testimony is confirmed by that of several other witnesses, who were in his employ, or in that of the defendant, during some portion of those years.   The complainant admits that, if defendant's exhibit No. 8, "anticipating terret," was made in this country prior to complainant's patent, it would invalidate the first claim.   No. 8 is a terret of German silver, with raised edges, and a rubber covering, on the outer surface only, between the rims.   There is nothing remarkable or novel in its construction, when compared with other of defendant's exhibits, which were made at about the same time, and some of which have just been mentioned.   The credibility of this witness has been seriously attacked on account of certain apparent discrepancies between his present testimony and that given by him on a previous occasion in another case; but, without entering into a minute investigation of these alleged discrepancies, it is sufficient to observe that the exhibits now before the court were not produced at the hearing in the former suit, and that the testimony now excepted to is corroborated by that of other witnesses. There is also another defense quite as conclusive as that of the "anticipating terret," which may be derived from the Albright patent, of 1867, which gave the patentee the right to cover metallic trimmings for harness with vulcanized rubber, so as to protect from rust, and impart an ornamental appearance.   There was nothing in that patent which prevented the inventor from covering a part as well as the whole of the article.   The use of the rubber was for protection and ornament, and it was discretionary with the patentee to cover the whole or part of the mounting, as he might see fit; and the drawings accompanying the patent show that a partial covering was contemplated of some articles, such as buckles and harness saddles; and, if this partial use was applicable to one class of mountings, it would be equally so to all.   In other words, there was no limitation in the Albright patent which made it necessary to cover the whole of the mounting or none at all.   The complainant contends that his leather-covered terret has taken precedence of, and driven all others out of the market; but the defendant has not made any leather-covered mountings, and, so far as they are concerned, has not infringed.   It is also in evidence that the defendant has never used any other covering for terrets than rubber, which he had the right to do under his older patent.   Again, it was candidly admitted that the complainant's invention was not of a very high grade of ingenuity; and it is more than questionable whether, in the absence of the "anticipating terret," the mere application of a leather covering to the outer surface of a solid metallic terret, in 1871, was evidence of that degree of invention which entitled it to the protection of a patent.   Leather had been used for the same purpose, although attached in a different way, by Tompkins, who had also dispensed with the inner lining; but the idea or principle was there, and it only required the exercise of judgment by a skilled mechanic to carry it one step further.   For these reasons the bill must be dismissed.